## DOTTERER v. THE STATE OF INDIANA.

[No. 21,369. Filed June 2, 1909.]

1. EVIDENCE.—*Credibility.*—*Conviction for Assault and Battery.*—*Witnesses.*—*Cross-Examination.*—In a prosecution of a saloon-keeper for an assault and battery upon a policeman who was trying to enter defendant's saloon on Sunday, there being persons unlawfully permitted therein, it is competent, on cross-examination, to ask a witness alleged to have been inside of such saloon and to have struck such policeman and who had denied being there, whether such witness had theretofore pleaded guilty to a charge of assault and battery upon such policeman at such place; and it is not necessary that the record of such conviction be produced. pp. 360, 363, 368.

2. CRIMINAL LAW.—*"Infamous" Crimes.*—*Assault and Battery.*—*Statutes.*—Section 530 Burns 1908, §506 R. S. 1881, providing that "any fact which might, heretofore, be shown to render a witness incompetent, may hereafter be shown to affect his credibility," removed the ban of R. S. 1843, p. 999, §79, rendering incompetent as witnesses persons convicted of infamous crimes, assault and battery not being "infamous." p. 361.

3. EVIDENCE.—*Moral Character of Witness.*—*Cross-Examination.*—*Statutes.*—Section 2116 Burns 1908, Acts 1905, pp. 584, 637, §240, providing that "in all questions affecting the credibility of a witness, his general moral character may be given in evidence," applies to the cross-examination of a witness; and, on cross-examination a witness may be shown to have been arrested, prosecuted or convicted of similar offenses. p. 361.

4. EVIDENCE.—*Credibility of Witness.*—*Conviction of Offense.*—*Denial of.*—Where a witness, as affecting his credibility, is shown to have been convicted of an offense, he cannot deny his actual guilt of the offense. p. 362.

5. WITNESSES.—Cross-Examination.—Scope.—Evidence.—The cross-examination of a witness may be carried far enough to overthrow the direct evidence of the witness, and to rebut all inferences therefrom.  p. 362.

6. EVIDENCE.—Independent Crimes.—System.—Identity.—Evidence of mutually dependent crimes is admissible if it tends to prove a system which becomes relevant to the inquiry, and the identity of a party may be shown though it involves a collateral crime. p. 362.

7. EVIDENCE.—Conviction of Similar Crimes.—Material Facts.— Evidence of defendant's conviction of similar crimes, as well as evidence of any material fact, is admissible against him.  p. 362.

8. WITNESSES.— Cross-Examination.— Scope.— Interest.—Credibility.—Evidence of any fact tending to impair the witness's credibility, or to show his interest, bias, ignorance, motives, or that he is depraved, is admissible on cross-examination, the scope of such inquiries being largely within the discretion of the trial court. p. 362.

9. WITNESSES.—Credibility.—Conviction of Offense.—How Shown. —As affecting his credibility, a witness may be asked on cross-examination whether he had been convicted of a certain offense, the record thereof being inadmissible as evidence-in-chief, being collateral.  p. 365.

10. WITNESSES.— Impeachment.—Contradictory Statements.—Witnesses may be impeached by evidence of contradictory statements, in, or out of, court.  p. 366.

11. EVIDENCE.—Best.—Records.—The rule requiring proof by record, where such exists, is not inflexible.  p. 367.

12. INTOXICATING LIQUORS.—Sales on Sundays.—Rights of Police to Inspect.—Expulsion.—Assault and Battery.—A policeman has a right to enter a saloon run in violation of law, and his forcible expulsion by the saloon-keeper constitutes assault and battery. p. 369.

13. APPEAL.—Right Result.—Where the right result was reached by the trial court, intervening errors will not constitute causes for reversal.  p. 370.

From Howard Circuit Court; Leroy B. Nash, Judge.

Prosecution by The State of Indiana against Jacob Dotterer.  From a judgment of conviction, defendant appeals. Affirmed.

Harness, Moon & Voorhis, for appellant.

James Bingham, Attorney-General, J. Fenimore Cooper, Prosecuting Attorney, Alexander G. Cavins, Edward M. White and William H. Thompson, for the State.

MYERS, J.—Appellant was convicted upon a charge of assault and battery, and the only error assigned arises upon the motion for a new trial.

The prosecuting witness testified that on Sunday, July 19, 1908, at about 2:30 o'clock p. m., while on duty as a patrolman, dressed in full uniform, and having his star and mace, he saw one Moynahan go to the back door of appellant's saloon and knock on the door two or three times, and work the door latch; that the door opened, and Moynahan entered the saloon; that he (witness) went directly to the same door, imitated the knocking on the door and working of the latch as nearly as he could, and the door was partially opened by appellant; that he stated to appellant that he wanted to see who was in there, and was informed by appellant, with an oath, that it was none of his business who was there; that he got his hand inside the door, and was then assaulted both by Moynahan and appellant, his face was scratched by appellant, who also struck him in the face, Moynahan hit him with a beer bottle, and appellant threw him out; that as he went out he got hold of appellant's suspender, and pulled it partly off; that he remained at the back door two or three minutes, then went to the front door and found Moynahan there, and soon after procured a warrant for the arrest of appellant. The statement of witness, that his face was scratched, is corroborated by others. Appellant testified that he started out of the back door, and there met the officer; that the latter put his foot inside the door, and said: "I want in;" that appellant said: "You have not got any business in here," and that he shoved the officer back, and as he shoved him back the officer grabbed appellant's suspender; that Moynahan was not there; that when he asked the officer to step back he would not do it, and he shoved him away; that he did not strike the officer, or scratch him in the face, and that a crowd collected there. Moynahan testified that about 12:30 o'clock on July 19 he had knocked at appel-

lant's side door, and failed to get an answer or to get in, and that he was not at the back door when the officer was; that he did not strike the officer, and did not see him until about half an hour after he (Moynahan) had tried to get into the saloon; that he had gone to appellant's place to get beer, but that he was not in or about the saloon after 2 o'clock.

It was in this connection that Moynahan was asked: "I will ask if you was ever convicted of assault and battery upon any person at a saloon—at the door of a saloon.

1. The person upon whom the assault and battery was committed was Edward Meeker [the prosecuting witness in this case], an officer, and at the back door of Dotterer's saloon, and on Sunday, when it was illegal to allow persons in a saloon, and you were convicted on that charge?" Objection was made that "the conviction of the witness for assault and battery upon an officer is not proper evidence to be introduced on cross-examination, as affecting the credibility of the witness. If he has been convicted of assault and battery, the only proper evidence to be introduced, if it is competent at all, would be the record of his conviction." The objection was overruled, and exception reserved, and the witness answered: "Yes, sir, I paid a fine." Reliance is here placed on the cases of *Farley* v. *State* (1877), 57 Ind. 331, 334, and *Glenn* v. *Clore* (1873), 42 Ind. 60. See, also, §§530, 2110 Burns 1908, §506 R. S. 1881, Acts 1905, p. 584, §234; *Commonwealth* v. *Walsh* (1907), 196 Mass. 369, 82 N. E. 19; *Bise* v. *United States* (1906), 144 Fed. 374, 376, 74 C. C. A. 1; *James* v. *United States* (1907), 7 Ind. Ter. 250, 104 S. W. 607. There is a diversity of holdings in the different courts upon the questions presented, and it will be useless to attempt to do more than to keep the line of cases in our own State upon a consistent course. Section 530, *supra*, is as follows: "Any fact which might, heretofore, be shown to render a witness incompetent, may be hereafter shown to

affect his credibility." Section 2110, *supra,* is as follows: "The rules of evidence prescribed in civil cases and concerning the competency of witnesses shall govern in criminal cases, except as otherwise provided in this act." Section 2116 Burns 1908, Acts 1905, p. 584, §240, is as follows: "In all questions affecting the credibility of a witness, his general moral character may be given in evidence." A like pro-·vision is contained in §529 Burns 1908, §505 R. S. 1881.

Section 530, *supra,* was evidently enacted in view of, 2. and to remove the ban of the provisions of section seventy-nine of R. S. 1843, p. 999, defining infamous crimes, and rendering those convicted of the defined crimes incompetent to testify even in civil causes. Assault and battery was not among the offenses. Section 2116, *supra,* applies to the cross-examination of a wit-3. ness, for it is well recognized in the practice that, both as to parties and witnesses, the State may show on cross-examination as affecting the credibility of a party, or witness, that he had been arrested, prosecuted or convicted of similar offenses. *Parker* v. *State* (1894), 136 Ind. 284; *Vancleave* v. *State* (1898), 150 Ind. 273; *Shears* v. *State* (1897), 147 Ind. 51; *Crum* v. *State* (1897), 148 Ind. 401. This section is declaratory of a general rule, and was enacted in 1881 doubtless in view of the rule in *Farley* v. *State* (1877), 57 Ind. 331.

In *People* v. *Cascone* (1906), 185 N. Y. 317, 78 N. E. 287, it is said: "The defendant in an action, whether civil or criminal, cannot be asked on cross-examination whether he has been indicted, for an indictment is merely an accusation and no evidence of guilt. * * * He cannot be asked if he was tried for a crime, unless it appears that he was convicted, because a trial followed by an acquittal is but an accusation successfully met. A conviction for crime may be proved, or, on cross-examination, actual guilt without a conviction, for either implies moral obliquity, and, hence,

affects credibility.'' Citing cases. And if he was convicted he cannot prove that he was not in fact guilty. *Commonwealth* v. *Galligan* (1891), 155 Mass. 54, 28 N. E. 1129.

''The cross-examination may go far enough, not only to overthrow the direct evidence of the witness, but also to rebut inferences.'' Gillett, Indirect and Collat. Ev., §90. And when the fact goes to the weight of the testimony, it is admissible. Gillett, Indirect and Collat. Ev., §91. ''A series of mutually dependent crimes may be shown where they tend to prove that they were committed under a system which becomes relevant to the inquiry.'' Gillett, Crim. Law (2d ed.), p. 653. It is always proper to introduce evidence of identity, though it may involve a collateral crime. Abbott, Trial Briefs (crim. cases), p. 349; Roscoe, Crim. Ev. (7th ed.), 90; *Frazier* v. *State* (1893), 135 Ind. 38, 41.

Also evidence of other similar crimes, or conviction thereof, may be shown. *Crum* v. *State, supra; Shears* v. *State, supra; Vancleave* v. *State, supra.* If the evidence tends to prove a material fact, it is admissible. 3 Rice, Evidence, §155; 1 Elliott, Evidence, §§174, 175; *Higgins* v. *State* (1901), 157 Ind. 57.

It is a well-recognized rule that any fact tending to impair the credibility of the witness, by showing his interest, bias, ignorance, motives, or that he is depraved in character, may be shown on cross-examination, but the extent to which such cross-examination may be carried is within the sound discretion of the court. 1 Wharton, Evidence (3d ed.), §567; *City of South Bend* v. *Hardy* (1884), 98 Ind. 577, 49 Am. Rep. 792; *Parker* v. *State* (1894), 136 Ind. 284, 286; *Spencer* v. *Robbins* (1886), 106 Ind. 580.

In *People* v. *Molineux* (1901), 168 N. Y. 264, 313, 61 N. E. 285, 302, 62 L. R. A. 193, it is said with regard to the rule as to showing the guilt or conviction of a party of a crime: ''Another exception to the general rule is, that when the evi-

Dotterer *v.* State—172 Ind. 357.

dence of an extraneous crime tends to identify the person who committed it as the same person who committed the crime charged in the indictment, it is admissible.''

Within this rule, it was clearly competent, for the purpose of impeaching and discrediting the witness, to connect him with the transaction, by showing his conviction

1. for the same offense, at the same time, and as a part of the same assault, when he had denied being present. The prosecuting witness had testified that Moynahan was present on the occasion mentioned, and struck him with a beer bottle. Appellant and Moynahan had both testified that Moynahan was not present. It is not made directly to appear that the occasion referred to in the question was the same as the one on which the assault is charged to have been committed, or that it was on the same person, though the name of the officer was given as ''Edward Meeker,'' the name of the prosecuting witness, but no objection was made on either of those grounds, but on the ground that the question was not proper on cross-examination. It is quite clear to us that if it was on the same occasion, and on the same person, the fact of conviction not only had a direct tendency, but was conclusive as to Moynahan upon that question, both as to a material fact, and as showing the witness's bias and prejudice, or grounds for them. The credibility of the witness was a matter to be considered, and tested by his cross-examination within proper limits. In view of his testimony, that he was not present when the prosecuting witness said he was, and when appellant says he was not, the fact went directly to affect his credibility. The fact of his conviction was material, and concluded him as to the one fact, and was admissible, if the occasion was the same. It was competent to show the identity of the transaction, by his cross-examination, and that he had been concluded on that question by a conviction on trial, or by a plea of guilty. It established the fact of his presence, in direct contravention of his testimony.

The cases of *Farley* v. *State, supra, Fletcher* v. *State* (1874), 49 Ind. 124, 19 Am. Rep. 673, and *Glenn* v. *Clore* (1873), 42 Ind. 60, were decided prior to the enactment of §2116, *supra,* and held that as a witness could not be impeached, or sustained by proof of general moral character, much less could this be so by proof of isolated acts of good or bad conduct.   In *Farley* v. *State, supra,* the defendant, on trial for the larceny of a horse, not having put his character in issue, was asked upon cross-examination: "Have you not been convicted of stealing horses before, and sent to the penitentiary?"   Over objection of irrelevancy and immateriality and that the question was not proper on cross-examination, he answered in the negative.   He was then asked: "Have you not been convicted of some other crime, and sent to the penitentiary?"   Over objection of irrelevancy, immateriality and that the evidence was improper in any event, and was not proper on cross-examination, he answered: "Yes, sir; for complicity in forgery."   The admission of this evidence was held improper, as not relevant to the issue. The case is based upon *Fletcher* v. *State, supra,* in which it is said: "It is conceded by counsel for appellant, that the State had the right to impeach the appellant, as a witness, by proving that his general character for truth and veracity was bad in the neighborhood of his residence; but it is very strenuously contended that the State had no right to prove what his general moral character was, to impeach him as a witness."   The charge there was forgery, and it was held that proof of the defendant's general moral character was improper, on the ground that the provisions of the civil code did not apply, and the effect was to put defendant's general moral character in issue without his consent, and without a statute authorizing it.   Both reasons are removed by the present statute.

In *Glenn* v. *Clore, supra,* a civil action, it was held error, on a trial for seduction, to introduce against a witness, for the purpose of affecting his credibility, the record on a

charge of assault and battery with intent to commit rape, when the conviction was for assault only. This evidence was held irrelevant and improper, on the ground that, as he was not incompetent as a witness prior to the adoption of the code, the offense of which he was convicted could not be admitted to affect his credibility under §529, *supra.*

We are unable to perceive that these cases are controlling in this case, except on the ground of the lack of identity of the time and place, to connect the incident with the material fact in issue at the trial. If the witness was convicted, it was clearly competent, but no objection having been interposed upon that ground, and the matter being apparently treated as the same incident, the objection made is unavailing. Besides, with the view we take of the evidence, even if not properly connected with the same transaction, appellant was not harmed by it.

Upon the question of the record's being the only method of discrediting the witness by reason of a former conviction, we do not think that the apparent rule in *Farley* v. *State,* *supra,* is controlling here. There the offense was grand larceny, an infamous crime at the common law, and under our statute of 1843, *supra,* which rendered the witness wholly incompetent, though such evidence was admissible, under the statute then in force, to affect his credibility. The record could not have been introduced in evidence by the State in chief, because it was collateral, the test being, would the cross-examining party be entitled to go into such matter in chief? If not, it is collateral. *Welch* v. *State* (1885), 104 Ind. 347; *Staser* v. *Hogan* (1889), 120 Ind. 207; *George* v. *State* (1884), 16 Neb. 318, 20 N. W. 311. The rule for requiring a record of a conviction grew out of a state of the law which rendered those convicted of infamous crimes incompetent as witnesses, and the rule requiring the record was for the two-fold purpose of certainty as to what the offense was, and in order that witnesses might not be deterred by imputation upon their character and integrity. Before

a witness could be disqualified, it should certainly and defi-
nitely be shown that he was thus disqualified, and this is the
reason and basis for the rule as shown in *Bise* v. *United
States* (1906), 144 Fed. 374, 74 C. C. A. 1, and *James* v.
*United States* (1907) 7 Ind. Ter. 250, 104 S. W. 607. *Com-
monwealth* v. *Walsh, supra,* is based on *Commonwealth* v.
*Quin* (1855), 5 Gray 478, and *Commonwealth* v. *Sullivan*
(1894), 161 Mass. 59, 36 N. E. 583.

There is some support for the holding in the former case,
which, together with *Farley* v. *State, supra,* is broadly
grounded on the doctrine declared in 1 Greenleaf, Evidence
(14th ed.), §457, that "When the question involves the fact
of a previous conviction, it ought not to be asked; . because
there is higher and better evidence which ought to be
offered." But in *Commonwealth* v. *Sullivan, supra,* the
rule is entirely relaxed, a fact which seems to be entirely
overlooked in *Commonwealth* v. *Walsh, supra,* for in *Com-
monwealth* v. *Sullivan, supra,* upon the question's being put
to the witness on cross-examination, "Were you ever in jail
in Essex county?" the court refused to allow the question
to be answered, unless the record of a conviction of the wit-
ness should be produced, and the cross-examiner stated that
he had no such record to produce. It clearly appears from
that case that it would have been held a proper question, in
case of a negative answer, if followed by a record of convic-
tion; but, if answered affirmatively, what good ground
could there be for demanding the record? To do so is to do
more than has been done. But, if there is a negative answer,
the record of conviction is an effectual impeachment, and is
admissible, if material. In the earlier cases, questions which
not only tended to criminate, but those tending to dis-
grace, witnesses were excluded. The rule before quoted
from 1 Greenleaf, Evidence (14th ed.), §457, has been much
modified, and we think with reason. It is a familiar
10. rule that a witness may be impeached by statements
made out of court, contrary to those made in court,

or by testimony given on a former trial, or by testimony in other cases involving the same question or transaction, different from that given in a second trial, and while such testimony might, in the modern preservation of evidence by stenographic notes, or by a bill of exceptions, be shown by them, we apprehend that there can be no good reason urged why a witness who heard the testimony may not, upon the laying of proper ground for the impeachment, testify to the fact. That is precisely what was attempted here, as we view it, and, while perhaps the ground was not definitely enough laid as to time and the individual assaulted, no objection was made on that score.

11. The rule as stated by Professor Greenleaf is based upon the doctrine that the best evidence of which a case in its nature is susceptible must be produced, but the rule has been attacked as not being a sound one and as uninstructive and unnecessary, and not applicable as a hard and fast one. Thayer, Prelim. Treat. on Ev., Ch. XI. It rests upon the presumption that, where better evidence is withheld, there may be some sinister motive in withholding it. *United States* v. *Reyburn* (1832), 6 Pet. *352, 8 L. Ed. 424; *Tayloe* v. *Riggs* (1828), 1 Pet. *591, 7 L. Ed. 275. The rule is said to rest upon the quality or grade, rather than upon the strength of the evidence. *Minor* v. *Tillotson* (1833), 7 Pet. *99, 8 L. Ed. 621; *Richardson* v. *Milburn* (1860), 17 Md. 67; *Robinson* v. *Mulder* (1890), 81 Mich. 75, 45 N. W. 505; *Western Union Tel. Co.* v. *Stevenson* (1889), 128 Pa. St. 442, 18 Atl. 441, 5 L. R. A. 515, 15 Am. St. 687; *United States Sugar Refinery* v. *E. P. Allis Co.* (1893), 56 Fed. 786, 6 C. C. A. 121; *Patton & Burgen* v. *Rambo* (1852), 20 Ala. 485; *Holmes* v. *Coryell* (1883), 58 Tex. 680. In 1 Elliott, Evidence, §216, it is said: ''It is sometimes said that there is an exception to the rule requiring the best evidence in the case of collateral writing and independent facts in issue. But these are cases in which the rule does not apply rather than exception to the rule. There is a

clear distinction between proving the existence of a fact which has been put in writing and proving the writing or contents of the writing itself. If the essential fact to be proved is not the contents of a written instrument, but an independent fact, to which the writing is merely collated, or of which it is merely an incident, there is no reason for the application of the rule. In such cases the contents of the document are not part of the issue and there is no understanding that the writing shall be the sole repository of the fact. When the evidence is as near to the fact testified as to the writing itself, then each is primary." In Gillett, Indirect and Collat. Ev., §91, it is said: "While there may be some reason for requiring that the record of conviction should be produced, where it is sought to disqualify a person as a witness on the ground that he is infamous, because the question as to whether he was convicted of an offense which renders him infamous is, to some extent, a technical one, yet where the only use that is sought to be made of the fact of conviction is to affect the weight of the testimony of a person as a witness, no good reason can be suggested why he should not be interrogated upon cross-examination as to that point." "The reasons for requiring record evidence of a conviction have very little application to a case where the party convicted is himself upon the stand and is questioned concerning it, with a view to sifting his character upon cross-examination. The danger that he will falsely testify to a conviction which never took place, or that he may be mistaken about it, is so slight, that it may almost be looked upon as purely imaginary, while the danger that worthless characters will unexpectedly be placed upon the stand, with no opportunity for the opposite party to produce the record evidence of their infamy, is always palpable and imminent." *Clemens* v. *Conrad* (1869), 19 Mich. 170.

In the case at bar the issuable fact was whether appellant had assaulted the officer. Whether the witness Moyna-

han was present was only a collateral and incidental fact, introduced by appellant by his testimony and that of Moynahan. The material collateral fact was that he had been convicted of an assault, presumably at the same time, on the same officer, and the facts of that assault, and his conviction of it, were as well known to him and his confession of it as of as high quality and probative force as the record itself, and the reason for the rule requiring the record in this case we think entirely fails. The admission by parol was as near the fact as the record could be. Rules of evidence are adopted for practical purposes.

But there is another branch of the case as to which there can be no doubt from the evidence. Appellant admits that the officer put his foot into the doorway, and he shoved the officer out, and, by the testimony of both appellant and the officer, it is clear that there was a struggle, and that the officer grabbed appellant's suspender, and it is undisputed that the officer's face was scratched. Whether the witness Moynahan was present was wholly immaterial. Appellant admits that he was in the saloon on Sunday. He was conducting a licensed business, but one subject to police surveillance, and he cannot object that the officer finding him there, at a time when business was forbidden, demanded admittance. This, appellant denied him, and admits that he forcibly ejected him, which he clearly had no right to do. It is made the express duty of policemen to "detect and arrest offenders," and to arrest on view, and to "carefully observe and to inspect all places of business under license, or required to have the same," and to "suppress and restrain all unlawful and disorderly conduct or practices, and enforce and prevent the violation of all ordinances and laws in force in such city." §§8782, 8785 Burns 1908, Acts 1905, p. 219, §§161, 164. The statute forbids all persons except the proprietor of a saloon and members of his family from going into such room on Sunday, and makes

the fact of a person's going into such room *prima facie* evidence of the violation of the statute as to sales, and policemen are required to enforce the provisions of the act. §§8326, 8330 Burns 1908, Acts 1895, p. 248, §§3, 7.

The act could only be enforced by inspection, and, being himself present, appellant was required to permit it, so that it is clear that his guilt is shown upon his own statement, and no error of which he can complain or prejudice of his substantial rights is shown. *Siberry* v. *State* (1896), 149 Ind. 684; *Shears* v. *State* (1897), 147 Ind. 51, 56, and cases cited; *Reed* v. *State* (1895), 141 Ind. 116; *Commonwealth* v. *Ducey* (1879), 126 Mass. 269.

The judgment is affirmed.